ORDER

The plea of guilty is accepted.
The recommendations in the
plea agreement are reserved
until the time of sentencing.

Eli Richardson
U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA )
)  No. 3·24-cr-00092
v. )
)  Judge Richardson
FRANK ROSS TALBERT )

PLEA AGREEMENT

The United States of America, by and through Braden H. Boucek, United States Attorney

for the Middle District of Tennessee, and Assistant United States Attorney Juliet Aldridge, and the

defendant, Frank Talbert, by and through the defendant's counsel, John G. Oliva, pursuant to Rule

11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an

agreement, the terms and conditions of which are as follows:

Charges and Penalties in This Case

1.      The defendant has been charged in the Indictment in this case with the following

offenses:

a.      Counts One, Three, Five, Seven, Nine, Eleven, Thirteen, and Fifteen: Arms

Export Control Act Import Violation, in violation of Title 22, United States Code, Section

2778(b)(2) This offense carries the following maximum penalties: twenty years in prison; a term

of supervised release of three years; and a fine of $1,000,000.

b.      Counts Two, Four, Six, Eight, Ten, Twelve, Fourteen, and Sixteen:

Smuggling Goods into the United States in violation of Title 18, United States Code, Section 545.

This offense carries the following maximum penalties: twenty years in prison; a term of supervised

release of three years; and a fine of $250,000.

1

c. Count Seventeen: Firearms Trafficking, in violation of Title 18, United States Code, Section 933(a)(1). This offense carries the following maximum penalties: fifteen years in prison; a term of supervised release of three years; and a fine of $250,000.

d. Counts Eighteen and Twenty-One: Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o). This offense carries the following maximum penalties: ten years in prison; a term of supervised release of three years; and a fine of $250,000.

e. Count Nineteen: Transporting Prohibited Weapons without a License, in violation of Title 18, United States Code, Section 922(a)(4). This offense carries the following maximum penalties: five years in prison, a term of supervised release of three years; and a fine of $250,000.

f. Count Twenty: Dealing in Firearms Without a License, in violation of Title 18, United States Code, Section 922(a)(1)(A). This offense carries the following maximum penalties: five years in prison; a term of supervised release of three years; and a fine of $250,000.

2. As a result of the defendant's offenses, the defendant is subject to forfeiture of property as alleged in the Indictment.

3 The defendant must pay upon conviction a $100 special assessment for each felony count to which the defendant pleads guilty, pursuant to Title 18, United States Code, Section 3013.

4. The defendant has read the charges against him contained in the Indictment. Those charges have been fully explained to the defendant by the defendant's attorney. The defendant fully understands the nature and elements of the crimes with which he has been charged.

2

<u>Charges to Which the Defendant is Pleading Guilty</u>

5.      By this Plea Agreement, the defendant agrees to enter a voluntary plea of guilty to Counts One through Sixteen and Twenty-One of the Indictment. In addition, as further provided below, the defendant agrees to entry of a forfeiture judgment. At sentencing, the government will move to dismiss the remaining counts of the Indictment.

<u>Factual Basis</u>

6.      The defendant will plead guilty because the defendant is in fact guilty of the charges contained in Counts One through Sixteen and Twenty-One of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish the defendant's guilt beyond a reasonable doubt:

> In May 2023, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents received information from a United States Customs and Border Patrol (CBP) Officer regarding suspected illegal shipments of firearms and/or firearms parts being imported into the United States. Agents identified the listed recipient of the shipments as Frank Talbert (defendant), United States Army Lieutenant Colonel, Explosives Ordinance Disposal (EOD), assigned to Fort Campbell Military Base. ATF Agents confirmed that defendant is not a licensed importer Federal Firearms Licensee (FFL) and the ATF Import Branch never approved ATF Form 6 (Application and Permit for Importation of Firearms Ammunition, and Defense Articles) for defendant.

> From June 2019 to July 10, 2022, defendant was stationed at Fort Hamilton in New York, where he was assigned to the United Nations as an Improvised Explosive Device (IED) Threat Mitigation Advisor. During this period, defendant lived on Base with his family in Brooklyn, New York. In July 2022, defendant was reassigned to Fort Campbell, Kentucky, where he moved with his family to his current residence in Clarksville, Tennessee.

> Customs records dating back to July 2019, show that defendant received over 350 foreign shipments of suspected firearms/firearms parts. CBP intercepted sixteen of these shipments and they all contained firearms parts and/or items that are listed as defense articles on the United States Munitions Import Munitions List. These imported items require an ATF Form 6 application/permit prior to importation. However, none of the shipments had an accompanying ATF Form 6; therefore, all items were seized by CBP. CBP sent photos from most of these

3

seizures and confirmed that these items are considered defense articles requiring an ATF Form 6 in order to be lawfully imported.

Customs records show that defendant used many variations of his name and his wife's name, as well as several addresses, to import firearm parts and/or defense articles. It is believed that once some of defendant's shipments were seized by Customs, he suspected his name and address had been flagged so he began using variations of his name and address to avoid detection by CBP.

### Counts One and Two:

On or about October 26, 2022, defendant imported and attempted to import a plastic AK-type pistol grip, an AK-type upper and a lower front hand guard. CBP intercepted the package containing these items addressed to defendant's address in Clarksville, Tennessee, at the JFK airport point of entry. Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained sets of plastic radiators with steel inserts valued at $45.

### Counts Three and Four:

On or about January 11, 2023, defendant imported and attempted to import two AK-type buttstocks. CBP intercepted the package containing these items addressed to defendant's wife at their address in Clarksville, Tennessee, at the JFK airport point of entry. Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained two stocks valued at $30.

### Counts Five and Six:

On or about January 17, 2023, defendant imported and attempted to import two receiver stubs, two selector levers, a front sight, a muzzle device, and an AK-type folding stock piece. CBP intercepted the package containing these items addressed to Fraunc Tauber at defendant's address in Clarksville, Tennessee, at the JFK airport point of entry Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained metal scrap and an Airsoft conversion part valued at $60.

### Counts Seven and Eight:

On or about January 19, 2023, defendant imported and attempted to import four AK-type front hand guards. CBP intercepted the package containing these items addressed to defendant's address in Clarksville, Tennessee, at the JFK airport

4

point of entry. Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained a wooden handrail set valued at $68

### Counts Nine and Ten:

On or about February 27, 2023, defendant imported and attempted to import six AK-type gas tubes CBP intercepted the package containing these items addressed to defendant's address in Clarksville, Tennessee, at the Miami airport point of entry. Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained a "tuby" valued at $235.

### Counts Eleven and Twelve:

On or about June 12, 2023, defendant imported and attempted to import two steel AK-type buttstocks and AK-type parts. CBP intercepted the package containing these items addressed to defendant's old address in Brooklyn, New York, at the JFK airport point of entry. Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained two (illegible) brackets, twenty-four steel pins, two steel frames, and three steel springs valued at $27.

### Counts Thirteen and Fourteen:

On or about July 8, 2023, defendant imported and attempted to import twenty-one buttstocks, one pistol grip, one handguard, one gas tube, and one receiver. CBP intercepted the package containing these items addressed to defendant's old address in Brooklyn, New York, at the JFK airport point of entry. Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained plastic valued at $2,370.

### Counts Fifteen and Sixteen:

On or about September 8, 2023, defendant imported and attempted to import fifty-five inert rifle grenades, ten military grenade satchels, and seven rubber buttstock pads. CBP intercepted the package containing these items addressed to defendant's old address in Brooklyn, New York, at the Newark airport point of entry. Defendant knowingly brought these prohibited items into the United States. The bill of lading for the package stated that it contained fifty-five unfunctional firearm replicas, ten additional side pockets, and seven rubber bushings valued at $540.

5

An ATF agent reviewed photos of each of the seized items and confirmed that these are indeed firearms parts and/or defense articles that are included on the United States Munitions Import Munitions List and that their total value exceeded $100 so they were not exempted from the license requirement, and some were from Russia which is a proscribed country.

Defendant did not obtain a license from ATF to import any of the items contained within the packages. In order to import firearm parts and/or defense articles into the United States, importers must submit an ATF Form 6 Application and Permit. An ATF agent confirmed that defendant did not obtain or apply for an ATF Form 6 permit to import any of the seized items.

Defendant knew that his importation of these items was unlawful and that he had not filed the proper import paperwork as required.

### Count Twenty-One: Possession of an Unregistered Machinegun

After learning of these seizures, ATF Agents discovered that defendant had a significant presence on TheAKForum.net, AKFiles.com, and Gunbroker.com. These are online forums where members can sell/purchase and discuss firearms.

Subpoenaed records from Gunbroker.com showed that defendant had an account history dating back to 2013. The information provided by Gunbroker.com included descriptions of the items that defendant posted for sale on his account through the years. Based on these descriptions, it appears that some of the items listed for sale by defendant would be considered "machineguns" under the NFA.

On October 18, 2023, ATF Agents executed a federal search warrant at defendant's residence in Clarksville, Tennessee. During the search, agents found a gun safe in the garage that included five firearms made from illegally imported single cut machinegun receivers. These firearms were later examined by an ATF Firearms and Ammunition Technology Division (FATD) expert who made the following determinations about the firearms:

- ATF Exhibit 9 is a 7.62x39mm caliber, Yugoslavian manufactured, machine gun that was imported into the United States as a machine gun parts-kit which contained a receiver that was not destroyed in accordance with ATF requirements. The firearm was reassembled by an unknown manufacturer, as if it were a newly manufactured, semiautomatic rifle. Exhibit 9 was originally decommissioned with a single sawcut to the rear of the trigger, severing the receiver in half. As such, the parts kit from which Exhibit 9 was assembled was not destroyed per ATF requirements and is still a machine gun as defined. Additionally Exhibit 9 contains the receiver of a weapon which is designed to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; therefore, Exhibit 9 is a "machinegun"

6

as defined in 26 U.S.C. § 5845(b) and a "firearm" as defined in 26 U.S.C. § 5845(a)(6)

- ATF Exhibit 11 is a 7.62x39mm caliber, Russian manufactured, machine gun. The Exhibit was imported into the United States as a machine gun parts-kit which contained a receiver that was not destroyed in accordance with ATF requirements (see attachments). The firearm was reassembled by an unknown manufacturer, as if it were a newly manufactured, semiautomatic rifle. Exhibit 11 was originally decommissioned with a single sawcut to the rear of the magazine well, severing the receiver in half. As such, the parts kit from which Exhibit 11 was assembled was not destroyed per ATF requirements and is still a machine gun as defined. Further, Exhibit 11 contains the receiver of a weapon which is designed to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; therefore, Exhibit 11 is a "machinegun" as defined in 26 U.S.C. § 5845(b) and a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

- ATF Exhibit 12 is a 7.62x39mm caliber, Bulgarian manufactured, machine gun. The Exhibit was imported into the United States as a machine gun parts-kit which contained a receiver that was not destroyed in accordance with ATF requirements. The firearm was reassembled by an unknown manufacturer, as if it were a newly manufactured, semiautomatic rifle. Exhibit 12 was originally decommissioned with a single sawcut to the rear of the magazine well, severing the receiver in half. As such, the parts kit from which Exhibit 12 was assembled was not destroyed per ATF requirements and is still a machinegun as defined. Further, Exhibit 12 contains the receiver of a weapon which is designed to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; therefore, Exhibit 12 is a "machinegun" as defined in 26 U.S.C. § 5845(b) and a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

- ATF Exhibit 13 is a 7.62x39mm caliber, Russian manufactured, machine gun. The Exhibit was imported into the United States as a machine gun parts-kit which contained a receiver that was not destroyed in accordance with ATF requirements. The firearm was reassembled by an unknown manufacturer, as if it were a newly manufactured, semiautomatic rifle. Exhibit 13 was originally decommissioned with a single sawcut to the rear of the magazine well, severing the receiver in half. As such, the parts kit from which Exhibit 13 was assembled was not destroyed per ATF requirements and is still a machine gun as defined. Further, Exhibit 13 contains the receiver of a weapon which is designed to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; therefore, Exhibit 13 is a "machinegun" as defined in 26 U.S.C. § 5845(b) and a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

- ATF Exhibit 18 is a 7.62x39mm caliber, Czechoslovakian manufactured, VZ58 machine gun receiver The Exhibit was imported into the United States as a machine

7

gun parts-kit which contained a receiver that was not destroyed in accordance with ATF requirements. The firearm was reassembled by Circle 7 Armory of Greenville, Texas, as if it were a newly manufactured, semiautomatic receiver. Exhibit 18 was originally decommissioned with a single sawcut to the rear of the magazine well, severing the receiver in half. As such, the parts kit from which Exhibit 18 was assembled was not destroyed per ATF requirements and is still a machine gun as defined. Further, Exhibit 18 contains the receiver of a weapon which is designed to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; therefore, Exhibit 18 is a "machinegun" as defined in 26 U.S.C. § 5845(b) and a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

Defendant is a high-ranking career member of the military with a sophisticated knowledge of guns. His text messages and postings on gun websites indicate defendant understood what he was importing and knew the items listed in Count Twenty-One of the Indictment were machineguns.

During the search, agents also located multiple shipping boxes containing illegally imported defense articles from various countries, including Russia Agents also observed a workstation containing large amounts of shipping supplies indicative of being engaged in the business of dealing without a Federal Firearms License (FFL).

Agents also recovered multiple documents and electronic devices. Defendant granted written consent to search the devices. Agents were able to review the content of these devices.

Messages retrieved from the Telegram application on defendant's personal cellphone between defendant and "Kirill" (who is believed to be a former Russian soldier/bodybuilder and weapons trafficker) demonstrate that defendant knows the importation of these firearms and firearms parts is illegal, and that he knows he is importing these items without the proper ATF paperwork.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty and criminal forfeiture. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and/or others' involvement in the offense conduct and other matters.

<u>Acknowledgement and Waivers Regarding Plea of Guilty: Trial Rights</u>

7.     The defendant understands that by pleading guilty the defendant waives and surrenders certain trial rights, including the following:

8

a.    If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a public and speedy trial. The defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if the defendant, the government, and the Court all agreed to have no jury.

b.    If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and the defendant's attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. At trial, the jury would be instructed that the defendant is presumed innocent; that the government bears the burden of proving the defendant guilty of the charges beyond a reasonable doubt; and that the jury must consider each count of the Indictment against the defendant separately.

c.    If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

d.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses, and the defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on the defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

9

e. At a trial, the defendant would have the right not to testify, and no inference of guilt could be drawn from the defendant's refusal to testify.

8. The defendant understands that, by pleading guilty, the defendant is waiving all of the trial rights set forth in the prior paragraph. The defendant's attorney has explained those rights, and the consequences of the defendant's waiver of those rights, to the defendant.

<u>Sentencing Guidelines Calculations</u>

9. The parties understand that the Court is required to consider the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at Title 18, United States Code, Section 3553(a), in determining the defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

10. The parties have no agreement regarding the sentencing guidelines calculation in this case, other than that the defendant will be entitled to a reduction in the defendant's offense level for acceptance of responsibility. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). If the defendant qualifies for a decrease under U.S.S.G. § 3E1.1(a), has an offense level of 16 or more prior to the operation of U.S.S.G. § 3E1.1(a), and has given timely notification of the defendant's intention to enter a plea of guilty, the United States will move for an additional one-level decrease in the applicable Sentencing Guidelines offense level, pursuant to U.S.S G. § 3E1.1(b).

11. The defendant is aware that any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the

Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. The defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculation, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office.

Agreements Relating to Sentencing

12.     <u>Sentencing Recommendation</u>. Each party is free to recommend whatever sentence it deems appropriate. The United States agrees not to recommend a fine. The United States further agrees not to oppose the defendant remaining on conditions of release after his entry of a guilty plea and prior to the sentencing hearing. The defendant understands that the defendant's request is not binding on the Court and, after considering the defendant's Sentencing Guidelines, the Court may impose the maximum penalties set forth above. The defendant understands further that the defendant will not be permitted to withdraw the defendant's guilty plea if the Court does not adopt the defendant's request. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and accept the plea agreement and enter an order reflecting the acceptance of both the plea and this plea agreement.

13.     Pursuant to Title 18, United States Code, Section 3572, all monetary penalties, including restitution imposed by the Court, shall be due and payable immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant

11

receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the defendant is unable to pay immediately, then the defendant agrees to the imposition of a schedule of payments established at sentencing. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce a judgment.

14. The defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which the defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

Forfeiture of Specific Property

15 The defendant acknowledges that the conduct forming the basis of this plea causes the following property to be subject to forfeiture, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c):

a. partially destroyed 7.62x39mm caliber, AK47-type firearm kit;

b. 7.62x39mm caliber Yugoslavian, M64 type firearm, with identifying number B-56801;

c. 7.62x39mm caliber, Russian manufactured AK47, type 1 firearm, with identifying number HP3685;

d. 7.62x39mm caliber, Bulgarian manufactured AK47, type 2 firearm with identifying number 3080;

e. 7.62x39mm caliber, Russian manufactured AK47, Type 2 firearm with an obliterated serial number;

f. 7.62x39mm caliber Czechoslovakian, VZ58 receiver, with identifying number R25381.

(collectively, "Subject Property").

16. The defendant acknowledges that the Subject Property has a substantial connection to the offense of conviction and admits that it represents firearms involved in or used in the offense.

12

17. The defendant consents to forfeiture of the defendant's interests in the Subject Property to the United States.

18. The defendant waives any defect in or failure of notice in the charging instrument, inclusion in the judgment, and any other procedural requirements of Fed R. Crim P. 32.2.

19. The defendant will cooperate with the United States in all forfeiture-related matters. This cooperation will include, but not be limited to: (a) truthful testimony; (b) consent to discovery concerning property involved in the offense and the defendant's assets; (c) execution of documents required to effect this agreement, including transfers of substitute assets; (d) the production or release of tax information, returns, or other financial documents concerning the defendant; and (e) repatriation of any proceeds of the offense held outside the United States.

20. Unless otherwise specifically agreed, the defendant relinquishes all claims or disputes in any administrative or civil forfeiture proceeding arising from the facts and circumstances at issue in the criminal case.

21. The U.S. Probation and Pretrial Services Office may release the Presentence Investigative Report to the Asset Forfeiture Unit of the United States Attorney's Office.

22. Forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose. The United States will seek approval from the Money Laundering, Narcotics and Forfeiture Section of the U.S. Department of Justice ("MNF") via the processes outlined at 28 C.F.R. § 9 and Title 18, United States Code, Section 3664, for any forfeiture payment to be credited toward any restitution obligation imposed in this matter. However, the ultimate discretion to grant or deny such requests lies with MNF.

23. The United States does not oppose the defendant disposing of his personal collection of firearms through a third party.

13

Presentence Investigation Report/Post-Sentence Supervision

24. The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Presentence Investigation Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charges against the defendant, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

25. The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of the defendant's financial circumstances, including the defendant's recent income tax returns as specified by the Probation Office. The defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of the defendant's sentence for obstruction of justice under U S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

Waiver of Appellate Rights

26. Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether the defendant is guilty of the crimes to which the defendant is agreeing to plead guilty; and (ii) trial rights that might have been available if the defendant had exercised the right to go to trial. Regarding sentencing, the defendant is aware that Title 18, United States Code, Section 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any

14

sentence within or below the Court-determined guidelines range. The defendant further waives all appellate rights and collateral attacks concerning forfeiture and all matters related thereto. The defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to Title 18, United States Code, Section 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to Title 28, United States Code, Sections 2255 and/or 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the Court-determined guidelines range.

### Other Terms

27.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against the defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

28.     Should the defendant engage in additional criminal activity after the defendant has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

15

Conclusion

29.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in Case No. 3:24-cr-00092.

30.    The defendant and the defendant's attorney acknowledge that no threats have been made to cause the defendant to plead guilty.

31.    No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

32.    The defendant understands that the Indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

33.    The defendant understands that the defendant's compliance with each part of this Plea Agreement extends until such time as the defendant is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. The defendant further understands that in the event the defendant violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or may require the defendant's specific performance of this Plea Agreement.

16

34.     The Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date:  13 APR 26

FRANK ROSS TALBERT
The Defendant

35.     Defense Counsel Signature: I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to the defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date:  4/13/2026

JOHN G. OLIVA
Attorney for the Defendant

Respectfully submitted,

BRADEN H. BOUCEK
United States Attorney

By:

JULIET ALDRIDGE
Assistant U.S. Attorney

 s/ Rachel Stephens
RACHEL M. STEPHENS
Deputy Chief

17